```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF IOWA
                         DAVENPORT DIVISION

KELLY NORBERG, Individually   )
and KELLY NORBERG, as Mother  )
and Next Friend of ALEC       )
NORBERG, a minor,             )     NO. 3:02-cv-80126-RAW
                              )
          Plaintiffs,         )
                              )     RULING ON PLAINTIFF'S
vs.                           )     MOTION FOR NEW TRIAL
                              )
LABOR READY, INC., a          )
Washington corporation,       )
                              )
          Defendant.          )
```

The above resisted motion [90] is before the Court following hearing. This is a premises liability personal injury action under Iowa law. The Court has diversity jurisdiction. 28 U.S.C. § 1332. Alec Norberg, age 3 at the time, was injured on November 1, 2000 while on Labor Ready's business premises in Davenport, Iowa, when his hand came in contact with a paper shredder. Alec's mother, Kelly Norberg, was an employee of Labor Ready. Kelly Norberg sued Labor Ready individually and as next friend of Alec for injuries sustained to Alec and for her own loss of services. See Ia. R. Civ. P. 1.206, 1.210. The matter came on for jury trial on May 25, 2005. The jury returned a verdict on May 27, 2005, finding that Labor Ready was not at fault.

Though captioned as a motion for new trial, plaintiffs seek both a judgment as a matter of law (JAML) and new trial. Fed. R. Civ. P. 50(b), 59(a). Plaintiffs contend they are entitled to judgment as a matter of law on a theory of general negligence (*res*

*ipsa loquitur*) and/or the "attractive nuisance" doctrine.[1] For new trial they argue on foundational and procedural grounds the Court erred in allowing defendants to demonstrate the noise made by the paper shredder when turned on using another "exemplar" shredder of the same kind.

JUDGMENT AS A MATTER OF LAW

Legal Standard

Our court of appeals has said that judgment as a matter of law in favor of the party with the burden of proof is "proper only in an exceptional case." Froemming v. Gate City Federal Savings & Loan Ass'n, 822 F.2d 723, 727 (8th Cir. 1987)(quoting Wilson v. United States, 530 F.2d 772, 777 (8th Cir. 1976)). Such a case arises when the issues of fact are admitted or established by the undisputed testimony of disinterested witnesses such that reasonable minds could not draw different conclusions. Id. (quoting Powers v. Continental Cas. Co., 301 F.2d 386, 388 (8th Cir. 1962)). See 9 Moore's Federal Practice § 50.05[2] at 50-23 (3d ed. 2005). Therefore, when the party with the burden of proof is the JAML movant the trial court must "test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect." 9A C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2535 at 328 (quoting Gatenby v. Altoona Aviation Corp., 407

---

[1] At the conclusion of the presentation of evidence plaintiffs made a JAML motion.

F.2d 443, 446 (3d Cir. 1968)). In reviewing the evidence the Court must, as with all JAML motions, view the evidence favorably to the non-movant. "[T]he court must assume as proven all facts that the nonmoving party's evidence tended to show, give [it] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [it's] favor." Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997); see Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005); Clark v. Kansas City, Mo. Sch. Dist., 375 F.3d 698, 701 (8th Cir. 2004).

Background Facts

Viewing the evidence favorably to Labor Ready the jury could reasonably have found substantially as follows. Labor Ready is in the business of providing temporary employment services. It has branch offices in numerous cities, one of which is in Davenport, Iowa. Kelly Norberg was employed in the Davenport branch as a customer service representative ("CSR"). Scott Albright was the branch manager. Dean Buttgen was the district manager in charge of the Davenport branch and eight others.

Labor Ready dispatched the temporary employees daily. The Davenport branch office had two main areas, referred to in the record as the front office area and back office area. (See Ex. A, B). A six-foot high shelving unit divided the front and back office areas. (Id.) The front office area was a public area where CSR's worked and included a waiting area. (Id.) The back office area was

restricted to employees only and was posted with a sign to that effect. The back office area was not large, about 400 square feet, consisting of a central room with a table, some file cabinets and, along one side, the separate office cubicles of Albright and Buttgen. (Id.) The two cubicles were separated by a partition five or six feet high.

The office opened every morning at about 5:30 a.m. The temporary employees reported for their assignments and would be dispatched by the branch manager. Labor Ready equipped its employees for their assignments, often with tools and other items kept in the back office area. The back office area was also used to process job applications, maintain customer files, and to store cleaning and other office supplies and equipment.

Labor Ready had a "daily paycheck policy" under which its employees could be paid daily. (Ex. C at 3). This necessitated a CSR staying later than normal working hours to pay employees and do the closing. Typically, the closing CSR was the only office employee present after about 4:30 to 5:00 p.m. and was not supervised. On November 1, 2000 Kelly Norberg had worked for Labor Ready for about seven months. She was required to stay that evening to do the closing, a job she had performed on other occasions. As he usually did, Kelly's husband, Randy Norberg, arrived to pick up his wife. Randy was accompanied by three of the four Norberg children, then ages 6, 5, and 3. Alec was the youngest.

Kelly was in the front office area seated behind the front counter at a computer. She was not ready to leave and told Randy to come in with the children and wait. She provided pens and pencils to the children, then Randy took them back to the back office area and seated them at the table.

There was a dispute in the record about whether the children of employees were allowed in the back office area. Kelly Norberg said her children had been in the back many times before, as had the children of other employees, branch manager Albright had seen them, and not said anything to her. Albright denied he had ever seen the Norberg children in the back office area. He did testify he once found a crayon in the back and asked Kelly if her children had been there. Kelly denied her children had been in the back, and Albright told her she could not have her children there. Both Albright and district manager Buttgen testified it was policy that no children were allowed in the back, indeed children were not to be in the branch at all, unless Buttgen made an exception which he had only done on a few occasions at the request of parents (Albright among them) who had temporary childcare problems. If the jury resolved the disputed testimony favorably to Labor Ready, it could have believed that children were not permitted in the back office area, the area was posted for employees only, and Kelly Norberg was aware and had been instructed her children should not be in the back. Correspondingly, the jury could have concluded

Labor Ready had no reason to expect children of Alec's age would be in the back office area.

Albright had an older paper shredder in his office on a stand.[2] The shredder did not have a guard. When the shredder was turned on it made enough noise that it was difficult to talk on the phone or communicate with those nearby. For this reason the normal practice of employees was to turn the shredder off when it was not in use. The jury could have found from the evidence the shredder was not turned on when Randy and the Norberg children arrived.

After a few minutes in the back office area Randy Norberg left the children unattended and went to the front office area to talk to Kelly. He had not talked to his wife long when he and Kelly heard a scream coming from the back. They ran back and found Alec with his right hand stuck in the shredder, which was running. No one witnessed Alec coming into contact with the shredder. From the circumstances the jury could have found that for some reason Alec got up from the table, walked the ten feet or so to Albright's cubicle, entered, turned the shredder on and somehow got his hand entangled. Alec sustained injuries to three fingers on his right hand. The injury to the middle finger required an amputation of the tip of the finger. The injuries to the other fingers required repair of the nailbeds. (See Ex. 8-6).

---

[2] A second, newer paper shredder with a guard was in the front office area.

*Res Ipsa Loquitur*

Under Iowa law *res ipsa loquitur* (now more commonly referred to as "general negligence") is a rule of evidence which "permits -- but does not compel -- an inference that the defendant was negligent." <u>Mastland, Inc. v. Evans Furniture, Inc.</u>, 498 N.W.2d 682, 686 (Iowa 1993); <u>see</u> <u>Clinkscales v. Nelson Securities, Inc.</u>, 697 N.W.2d 836, 847 (Iowa 2005). Since the rule merely permits an inference of negligence, it is a poor vehicle by which to grant a personal injury plaintiff judgment as a matter of law. More fundamentally, in this case the evidence did not warrant submission of the issue and the Court did not do so.

The *res ipsa loquitur* rule applies only when "(1) the injury is caused by an instrumentality under the exclusive control of the defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." <u>Brewster v. United States</u>, 542 N.W.2d 524, 529 (Iowa 1996); <u>see</u> <u>Clinkscales</u>, 697 N.W.2d at 847; <u>Graber v. City of Ankeny</u>, 616 N.W.2d 633, 643 (Iowa 2000)(citing <u>Brewster</u>, 542 N.W.2d at 529). "A party must produce substantial evidence of both elements to be entitled to an instruction on general negligence under the *res ipsa loquitur* doctrine." <u>Graber</u>, 616 N.W.2d at 643. Substantial evidence is lacking on both elements here.

The plaintiff must show exclusive control by defendant at the time of the alleged negligent act, <u>Weyerhaeuser Co. v.</u>

Thermogas Co., 620 N.W.2d 819, 832 (Iowa 2000), which here was maintenance of the shredder in a location where children like Alec could have access to it. (See Inst. No. 11). Thus, the time of the alleged negligent act and injury were the same in this case. At the time of the injury to Alec the shredder was in the control of Kelly Norberg. Kelly had used the shredder and was aware of its location in Albright's cubicle. She could have unplugged it, moved it or taken other steps to "child-proof" the danger to an inquisitive three-year-old.[3]

Nor was this an occurrence to which *res ipsa loquitur* could properly apply, indeed what occurred here was the kind of accident that could have happened despite the exercise of reasonable care. The occurrence must be such that in the "common experience of lay persons" would not have happened if reasonable care had been used. Brewster, 542 N.W.2d at 530 (citing Reilly v. Straub, 282 N.W.2d 688, 693-94 (Iowa 1979)). *Res ipsa loquitur* thus fills the gap where there is no direct evidence of causation and an inference of negligence is permissible from the fact of injury itself. Weyerhaeuser, 620 N.W.2d at 833.

---

[3] Labor Ready resists the JAML motion in part on the argument "the jury correctly found that Kelly Norberg was responsible for the injury suffered by Alec Norberg . . . ." (Def. Brief at 2). The jury made no such finding concerning the comparative fault of Kelly Norberg. Finding no fault on Labor Ready's part, it never reached the issue.

The problems with the occurrence prong here are that the injury resulted from the sudden and unforeseen acts of a very young child and there is direct evidence of causation. What the Iowa Supreme Court said about the propensities of young children in Mastland, supra, is instructive in this case. Mastland rejected *res ipsa loquitur* as a means to find parental negligence in the case of a toddler who started a fire with a cigarette lighter.

> Common experience teaches us that two and three-year-olds are inquisitive and mischievous, giving rise to the old adage "the terrible two's." The point is that such children may get into mischief despite a parent's best efforts and care to prevent it.

498 N.W.2d at 686. Of course, Labor Ready was one large step further removed from parental responsibility because it had no reason to anticipate that an unsupervised three-year-old child would be in the private area of its business premises. Concerning Labor Ready's involvement in this unfortunate accident, the fact of injury does not speak for itself.[4]

"Attractive Nuisance"

For legal and factual reasons plaintiffs' alternative "attractive nuisance" argument could not support judgment as a matter of law in plaintiffs' favor. "The so-called attractive nuisance doctrine was merely another attempt to ameliorate the harsh result of . . . trespasser status when applied to children."

---

[4] "*Res ipsa Loquitur* is Latin for 'the thing speaks for itself.'" Clinkscales, 697 N.W.2d at 847.

Rosenau v. City of Estherville, 199 N.W.2d 125, 136 (Iowa 1972). "Most jurisdictions now agree the element of 'attraction' is important only insofar as it may mean the presence of a child is to be anticipated, and that the basis of liability is merely the foreseeability of harm to the child." Id. The Court did not submit premises liability on the basis that Alec was a trespasser. Rather, the Court submitted the case as if Alec had been an invitee. Compare Iowa Civil Jury Inst. No. 900.1 with Inst. No. 11. As a consequence, whether Labor Ready should have anticipated Alec's presence and the foreseeability of harm to him were elements of plaintiffs' claim submitted to the jury. (See Inst. No. 11).

The attractive nuisance argument is also factually inapposite. The alleged attraction was a box of old toys in district manager Buttgen's adjoining cubicle. (See Ex. 5). Buttgen testified the toys were in poor condition and had been given to him for his three-year-old by a good-hearted employee. Buttgen had put them in his cubicle with the intent of eventually discarding the toys. The jury could have, and probably did find Alec was not attracted to the toys from the simple fact that he did not go to the toys, but to the shredder in Albright's adjacent cubicle.

This is not the exceptional case with evidence so overwhelmingly in plaintiffs' favor that a judgment as a matter of law for plaintiffs could be warranted. It is instead a case in which the weight of the evidence is very much in the opposite direction.

NEW TRIAL

Plaintiffs claim evidentiary error in a ruling on the second day of trial allowing Labor Ready to use an exemplar paper shredder to demonstrate the sound made by the machine when turned on. In her direct testimony Kelly Norberg said that the paper shredder could not be heard if it was on unless it was shredding paper, suggesting it had been left running when the other office workers left that afternoon. Randy Norberg testified he did not hear the shredder prior to the accident. The shredder that injured Alec had been damaged after the accident and was inoperable. Labor Ready equipped its offices alike and district manager Buttgen obtained a shredder of the same kind and manufacture from the Burlington, Iowa branch office to demonstrate the sound made by the shredder that hurt Alec. Buttgen and other Labor Ready witnesses testified the shredder in the Davenport office had made the same or similar sound when turned on as the one from Burlington. The sound was distinctive and loud enough that anyone with ordinary hearing in the back office area could not have missed it. Labor Ready offered the demonstration solely to impeach Kelly Norberg's testimony.

The exemplar paper shredder was not on the exhibit list and had not been disclosed prior to trial. Plaintiffs objected to the demonstration on this basis and also for lack of foundation. The Court overruled the objection and allowed the demonstration

solely for the purpose of impeaching Mrs. Norberg's testimony.[5] The exemplar shredder was not received as an exhibit and did not go back to the jury during deliberations.

An adequate foundation for the admissibility of the demonstration was laid through Mr. Buttgen. Plaintiffs' complaints about his lack of knowledge concerning the date of manufacture, sale and maintenance of the shredder from Burlington go to weight, not admissibility. As to pretrial disclosure, the record concerning the offer reflects that in her pretrial deposition Kelly Norberg was not asked and did not testify about the sound made by the shredder. Labor Ready's counsel said he did not anticipate her direct testimony that it was silent. Mrs. Norberg's credibility on this and other subjects was very much in issue. The pretrial disclosure requirements of Fed. R. Civ. P. 26(a)(3) do not require the disclosure of evidence presented at trial solely for impeachment. Similarly, our Court's local rules do not require the pretrial disclosure of impeachment exhibits. See LR 83.7(b).

In any event, the Court is not convinced that any error in this regard could have affected the substantial rights of plaintiffs or that denial of new trial is inconsistent with substantial justice when the entire record is considered. Fed. R.

---

[5] In overruling the objection the Court offered to give an appropriate limiting instruction requiring the jury to the consider the demonstration only for the purposes of impeachment. Plaintiffs' counsel declined the invitation.

Civ. P. 61. The verdict was in accord with the clear weight of the evidence. Specifically on the noise issue, all of the present and former Labor Ready employees who testified, Scott Albright, Timothy Buttgen, assistant branch manager Kathleen Archer, and former CSR Avery Coen testified, in substance, that the shredder was noisy when turned on. Moreover, given the small size of the back office area and the nature and intended use of paper shredders like that involved, it seems very improbable that in the ordinary course the shredder would have been left running after hours and if it was running, that it would have gone unnoticed by Randy Norberg, if not Kelly.

For the foregoing reasons plaintiffs' motion for new trial is denied.

IT IS SO ORDERED.

Dated this 4th day of August, 2005.

_____
ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE